```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

DENNIS THIBODEAU, et al.,       :
                                :
        Plaintiffs,             :
                                :
V.                              :  Case No. 3:13CV00710 (RNC)
                                :
UNITED STATES OF AMERICA,       :
                                :
        Defendant.              :
```

## RULING AND ORDER

Plaintiffs Dennis and Frances Thibodeau bring this action under the Federal Tort Claims Act ("FTCA") alleging that Mr. Thibodeau was exposed to asbestos while a crew member on two tugboats - the Hackensack and the Kelsey - that the Department of the Navy leased to his employer, General Dynamics Corporation, Electric Boat Division ("EB").  Mr. Thibodeau brings a products liability claim under Conn. Gen. Stat. § 52-572m and Mrs. Thibodeau brings a derivative loss of consortium claim. Defendant has moved to dismiss the action, asserting principally that the Court lacks jurisdiction over plaintiffs' claim under the FTCA because the lawsuit sounds in admiralty, for which the exclusive civil remedy against the United States is a suit under the Suits in Admiralty Act ("SIAA") or the Public Vessels Act ("PVA") and with respect to which the two-year statute of limitations has expired.  For reasons that follow, the motion to dismiss [ECF No. 30] is granted and the case is dismissed.

I. Background

    The amended complaint alleges the following.  At all relevant times, Mr. Thibodeau was employed at EB as a member of the crew of the Hackensack and the Kelsey, tugboats that EB leased from the Department of the Navy.  Am. Compl. (ECF No. 25) ¶¶ 6-9.  The tugboats were sometimes in operation and sometimes undergoing periods of repair, rip out, maintenance, shipbuilding and overhaul, at which time they were not in operation or capable of navigation.  Id. ¶ 6.  While employed on board the Hackensack and the Kelsey, Mr. Thibodeau worked in areas where asbestos was present, used and removed, including during periods of repair, rip out, maintenance, shipbuilding and overhaul.  Id. ¶ 10.  He was exposed to asbestos and other dusts and fumes, which caused him to suffer injuries to his lungs and cardiopulmonary system. Id.

    Mr. Thibodeau's product liability claim under Conn. Gen. Stat. § 52-572m alleges that the defendant: designed, manufactured, sold, leased and delivered products containing or involving asbestos, with an inherent risk of harm; failed to advise plaintiff of the dangers or recommend safety precautions; failed to take steps to reduce exposure; and intentionally misrepresented and concealed the dangers.  Mr. Thibodeau claims that, as a result of theses acts and omissions, he sustained asbestos-related lung disease and damage to his cardiopulmonary

system.  Mrs. Thibodeau's loss of consortium claim alleges that the illness and injuries her husband suffers as a result of his exposure to asbestos deprive her of the affection, comfort, service, society, support and consortium to which she is entitled.

II. Motion to Dismiss

Defendant has moved to dismiss the action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  A plaintiff asserting subject matter jurisdiction has the burden of proof on the issue.  See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Defendants argue that plaintiffs' claims sound in admiralty and thus the FTCA's waiver of sovereign immunity does not apply. See 28 U.S.C. § 2680(d) ("The provisions of this chapter and section 1346(b) of this title shall not apply to . . . [a]ny claim for which a remedy is provided by chapter 309 or 311 of title 46 relating to claims or suits in admiralty against the United States.").  They contend that the exclusive remedy for plaintiffs' claims is provided by the Suits in Admiralty Act ("SIAA"), 46 U.S.C. § 30901 et seq., which waives sovereign immunity for cases in which "if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained," § 30903, and the Public Vessels

Act ("PVA"), 46 U.S.C. § 31101 et seq., which waives sovereign immunity for "damages caused by a public vessel of the United States." § 31102.  See 46 U.S.C. § 30904 ("If a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee or agent of the United States . . . ."); 46 U.S.C. § 31103 ("A civil action under this chapter is subject to the provisions of chapter 309 of this title except to the extent inconsistent with this chapter."); Keene Corp. v. United States, 700 F.2d 836, 843 n.11 (2d Cir. 1983) ("These jurisdictional bases [the SIAA, PVA and FTCA] are mutually exclusive.").  I agree that plaintiffs' claims sound in admiralty and thus are not cognizable under the FTCA.[1]

Two conditions must be met for federal admiralty jurisdiction over a tort claim.  First, under the location test, the Court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995).  Second, under the connection test, the Court must "assess the general features of the type of incident involved to determine whether the incident

---

[1] Because the Court lacks jurisdiction under the FTCA, I need not consider whether plaintiffs have failed to submit administrative tort claims within two years from the date they accrued, as required by that statute, which defendant proffers as an additional basis for dismissal.

4

has a potentially disruptive impact on maritime commerce" and "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."  Id. (internal quotations omitted).[2]

As to the location test, "in the case of asbestos-related disease arising from work on or around ships, . . . [the] test is satisfied as long as some portion of the asbestos exposure occurred on a vessel in navigable waters."  Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455, 466 (E.D.Pa. 2011); see also Riddle v. Foster Wheeler, LLC, MDL No. 875, 2012 WL 2914222, at *1 n.1 (E.D. Pa. May 25, 2012)("If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in 'dry dock'),

---

[2] Plaintiffs urge that the Court should apply the standard set out by the Supreme Court in Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249 (1972), which referenced a historic requirement that "the wrong and injury complained of must have been committed wholly upon the high seas or navigable waters," id. at 253, and explained that the injury must also "bear a significant relationship to traditional maritime activity."  Id. at 268.  The two-part test outlined by the Supreme Court twenty-three years later in Grubart, however, is the applicable test for admiralty tort jurisdiction.  E.g., Tandon v. Captain's Cove Marina of Bridgeport, Inc., No. 13-461, 2014 WL 2016551, at *6 (2d Cir. May 19, 2014) (explaining that "the Court restated and formalized the current test for admiralty tort jurisdiction" in Grubart).

the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.") (internal citations omitted); Mazzaia v. A.O. Smith Corp., CV115029478S, 2013 WL 1224024, at *2 (Conn. Super. Ct. Mar. 7, 2013) ("The party invoking maritime jurisdiction, however, must make an evidentiary showing in order to demonstrate, by a preponderance of the evidence, that at least some of the alleged exposure occurred on a vessel on navigable waters.").

In the present case, the record clearly establishes that some of the asbestos exposure occurred on a vessel in navigable waters. The amended complaint alleges that exposure to asbestos occurred while Mr. Thibodeau was working as a crew member on the Hackensack and the Kelsey, "which at times were in operation and at other times[] were undergoing periods of repair . . . and were not in operation." Am. Compl. (ECF No. 25) at ¶ 6. See also id. ¶ 10 ("At all relevant times and while employed on board the Hackensack and Kelsey, Mr. Thibodeau worked in areas where asbestos products were present, used, and removed, including during periods of repair, rip out, maintenance, shipbuilding and overhaul and when the tugboats or entities were not in operation or practically capable of navigation, and he was exposed to

asbestos and other dusts and fumes . . . ."). Indeed, the original complaint alleged that "[a]t all relevant times hereto, Mr. Dennis Thibodeau was employed at General Dynamics Corporation, Electric Boat Division at its shipyard in Groton, Connecticut as a member of the crew of vessels known as the Hackensack and the Kelsey which were tugboats in operation," Compl. (ECF No. 1) ¶ 6, and asserted that "[a]t all relevant times and while employed on board the Hackensack and Kelsey, Mr. Thibodeau worked in areas where asbestos products were present and used and he was exposed to asbestos . . . ." Id. ¶ 10. Moreover, Mr. Thibodeau filed suit in this Court on June 26, 2008, asserting admiralty jurisdiction over claims against his employer, alleging injuries to his lungs and cardiovascular system from asbestos exposure while employed as a crew member of the Hackensack and Kelsey. See Thibodeau v. General Dynamics Corp. et al., No. 3:08-cv-00964 (SRU); id. Compl.(ECF No. 1) ¶¶ 3-6 (alleging that at all relevant times the Hackensack and the Kelsey were vessels engaged in hauling operations on waterways). Mr. Thibodeau testified at his deposition that the Hackensack was "loaded" with asbestos, including in the galley, where the exhaust pipe for the engine was, and in the piping for the engine. See Dep. of Dennis Thibodeau, Def.'s Ex. A at 18:15-19:2 (ECF No. 36-2 at 18-19). He further testified that there weren't "too many major breakdowns" during his employment. Id. at 20:13-

20:14 (ECF No. 36-2 at 20). Letters submitted from physicians to plaintiff's counsel in support of his administrative tort claim confirmed that the alleged exposure to asbestos was not limited to periods of major repairs. See Letter from John A. Pella, M.D. to Plaintiffs' Counsel (Dec. 19, 2008 ), Def.'s Ex. 6 at (filed under seal) (noting Mr. Thibodeau's description of asbestos dust exposure from deteriorating insulation on the Hackensack); Letter from Susan M. Daum, M.D., to Plaintiffs' Counsel (Jan. 21, 2009), Def.'s Ex. 7 at 6 (filed under seal)(describing exposure to asbestos on board the Hackensack from the engines, exhaust, and pipes in addition to repair work on asbestos-covered piping and equipment).

Plaintiffs argue that admiralty jurisdiction does not apply because "Mr. Thibodeau suffered significant exposure to asbestos during periods of major repair and overhaul on the Hackensack" during which the vessel was "inoperable and not capable of navigation." Pls.' Mem. in Opp'n to Mot. to Dismiss (ECF No. 36-1) at 3. It is beyond reasonable dispute, however, that at all other times the Hackensack and the Kelsey were vessels in navigable waters and Mr. Thibodeau was a seaman eligible to recover damages for admiralty claims.[3]

---

[3] The Supreme Court has explained that "[a] ship and its crew do not move in and out of Jones Act coverage [which permits seamen to bring actions for damages resulting from personal injury in the course of employment] depending on whether the ship is at anchor, docked for loading or unloading, or berthed for

Accordingly, because "some portion of the asbestos exposure occurred on a vessel in navigable waters," the locality test is satisfied regardless of whether certain major repairs rendered the Hackensack no longer a vessel in navigation.[4]

Regarding the connection test, exposure to asbestos by crew members during repair and construction of vessels on navigable waters has the potential to disrupt maritime commerce and bears a substantial relationship to maritime activity.  See, e.g., Hammer v. A.L. Burbank & Co., Inc., CV095026285S, 2013 WL 3871415, at *3 (Conn. Super. Ct. July 8, 2013) (plaintiff's exposure to asbestos while working as a merchant marine and boiler inspector had

---

minor repairs. . . ."  Stewart v. Dutra Const. Co., 543 U.S. 481, 494, (2005); see also Chandris, Inc. v. Latsis, 515 U.S. 347, 361 (1995) ("seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore"); id. at 374 (explaining that "it is generally accepted that a vessel does not cease to be a vessel when she is not voyaging, but is at anchor, berthed, or at dockside, even when the vessel is undergoing repairs" but acknowledging that at some point "repairs become sufficiently significant that the vessel can no longer be considered in navigation.").  Plaintiffs assert that the Hackensack underwent major repairs sufficient to remove it from navigation at certain times during Mr. Thibodeau's employment, a contention that defendant disputes.  Admiralty jurisdiction is appropriate nonetheless, however, where, as here, at least some of the asbestos exposure occurred while the tugboat was undisputedly a vessel on navigable water.

[4] For this reason, the discovery that plaintiffs seek related to "the frequency, duration, and nature, extent and significance of the overhauls, rip-outs and repairs" and other information regarding whether the tugboats were "in navigation" during such periods, see Pls.' Mem. in Opp'n to the Mot. to Dismiss (ECF No. 36-1) at 17-18, would not affect the Court's ruling.

potentially disruptive impact on maritime commerce because it could slow work performance, create unsafe working conditions and establish labor shortages, and products alleged to contain asbestos had a substantial relationship to traditional maritime activity because they were essential for proper functioning of ships and were manufactured for that purpose); <u>Conner v. Alfa Laval, Inc.</u>, 799 F. Supp. 2d 455, 467-69 (E.D. Pa. 2011)(exposure to allegedly defective products on or around vessels that routinely sailed and docked on navigable waters and connected to maintenance work integral to the functioning of the ships had a potentially disruptive impact on maritime commerce unless predominantly land-based worker; allegedly defective products bear substantial relationship to traditional maritime activity if essential to the proper functioning of ships and made for that purpose).

As discussed above, the allegations of the complaint and the evidence offered by plaintiff do not permit the Court to find that Mr. Thibodeau was primarily a land-based worker or that his exposure to asbestos occurred exclusively on tugboats that were no longer vessels in navigation.  Therefore, plaintiffs' claims are cognizable in admiralty and the Court lacks jurisdiction under the FTCA.

Amendment of the complaint to assert admiralty jurisdiction would be futile because this suit was not filed within two years

from the date of injury as required by the applicable statutes of limitations.  See 46 U.S.C. § 30905 ("A civil action under this chapter must be brought within 2 years after the cause of action arose."); § 31103 ("A civil action under this chapter is subject to chapter 309 of this title except to the extent inconsistent with this chapter.").  Plaintiffs initiated this action on May 16, 2013, more than six years after the November 9, 2006 injury date provided by Mr. Thibodeau in his administrative tort claim.  Moreover, even if equitable tolling were available,[5] it would not be warranted on the basis of the filing of an administrative claim under the FTCA.  E.g., Ayers v. United States, 277 F.3d 821, 828-29 (6th Cir. 2002) (equitable tolling not warranted even though admiralty jurisdiction over matter not settled as a matter of law because it was well-established that filing of administrative claim under FTCA would not toll limitations period under SIAA, diligent research would have revealed possible claim

---

[5]  It appears that equitable tolling of the SIAA and PVA is not available in this Circuit.  See Corbett v. United States, 96 CV 3762 (SJ), 1997 WL 215699 (E.D.N.Y. Apr. 28, 1997)(explaining that the Second Circuit has held that the SIAA statute of limitations cannot be tolled because it is a conditional waiver of sovereign immunity); Epshteyn v. United States, 657 F. Supp. 255, 256 (S.D.N.Y. 1987) aff'd, 838 F.2d 1202 (2d Cir. 1987) ("Under the limitation period of the PVA, if suit is not filed within two years, the claim is extinguished. Because the two-year limitation period of the PVA is jurisdictional, it cannot be waived or tolled.").

11

under SIAA and that limitations period would most likely not be tolled, and plaintiff could have requested relief under both Acts in the initial complaint).

III. Conclusion

Accordingly, the motion to dismiss for lack of subject matter jurisdiction is hereby granted.  The Clerk may enter judgment and close the case.

So ordered this 30th day of September 2015.

_____/s/_____
Robert N. Chatigny
United States District Judge